429 P.2d 953

STATE of Arizona, Appellee,

v.

Clyde S. TANNAHILL, Appellant.

No. 1427 PR.

Supreme Court of Arizona,
In Banc.
July 7, 1967.

Robert W. Pickrell, former Atty. Gen., Darrell F. Smith, Atty. Gen., Norman E.

Green, County Atty., of Pima County, and John L. Augustine, Deputy County Atty., of Pima County, for appellee.

John R. McDonald, Tucson, for appellant.

UDALL, Justice.

Clyde S. Tannahill, hereinafter referred to as defendant, was tried and convicted on October 14, 1963, in the Superior Court of Pima County on two counts—incest with his twelve year old daughter and attempted incest with his ten year old daughter. He appealed and on May 19, 1965, the Court of Appeals, Division 2, rendered an opinion reported in 1 Ariz.App. 281, 402 P.2d 29, remanding the case to the superior court with directions to hold a hearing as to the voluntariness of defendant's confession, which was admitted in evidence at the trial.

Defendant petitioned this Court to review the Court of Appeals decision. We granted the petition and on February 18, 1966, in a unanimous opinion reported in 100 Ariz. 59, 411 P.2d 166, we agreed with the disposition of the matter made by the intermediate appellate court and stated that if on remand to the superior court the defendant's confession was found to have been voluntarily given an order would issue from this Court affirming defendant's convictions.

Subsequently, the hearing on voluntariness was held and culminated in a finding that defendant's confession was voluntary. We entered the appropriate order affirming defendant's convictions and denied his motion for a rehearing.

This matter is now before us by way of defendant's motion for reconsideration of the denial of his motion for a rehearing. We have entertained the instant motion for the reason that if defendant's allegations in his petition are true, it would appear that he has been deprived of certain of his constitutional rights.

Defendant alleges that this Court was misled as to two issues: one, as to the facts pertaining to whether defendant was represented by counsel during the period between his arrest and his confession and two, as to the facts concerning who instigated the polygraph test which led to defendant's confession. In effect, he claims that the following is a misstatement of the facts:

"Appellant testified that he talked with his attorney two or three times between the arrest and the morning of June 29th, when, at his request, he was taken to Detective John Rohr for a polygraph test." State v. Tannahill, 100 Ariz. 59, 60, 411 P.2d 166.

With reference to the first issue, defendant has submitted a sworn affidavit of attorney William S. Reed, in which Reed declares that he did not represent defendant at any time; that he went to the jail only once to see defendant, and that such was at the request of defendant's employer, not the defendant.

■ After carefully reviewing the transcripts of testimony given both at defendant's trial and at the later hearing held to determine the voluntariness of his confession, we are of the opinion the record clearly shows that defendant was represented by counsel and that defendant consulted with his attorney at least two times prior to the date he made his confession.

Defendant took the witness stand at his trial and gave the following testimony:

"Q And after you were arrested did you talk to the lawyer?

"A Yes.

"Q How many times?

"A The one I had at that time, two or three times.

"Q And was this from the periods of the 26th to the 29th of June?

"A From the 27th.

"Q From the 27th to the 29th of June?

"A Yes.

At the hearing on voluntariness defendant again testified:

"Q When was the next time you came out of the tank?

"A When my attorney came up to see me.

"Q Did you discuss the case with your attorney at that time?

"A Yes, I did.

"Q What did you tell him?

"A I told him—He told me what Garcia told him and I told him what Garcia told me and I told him I wasn't giving a story.

"Q How long did you talk with your attorney?

"A I don't know, maybe five or ten minutes, I guess; then he left.

\* \* \* \* \* \*

"Q When was the next time you came out of the tank?

"A On July—June 28th.

"Q Who did you talk to then?

"A They took me up for fingerprints and pictures.

"Q Did you go back to the tank after that?

"A Yes.

"Q Did you get out of the tank that day again to see Mr. Reed?

"A Yes. I sent for him. I had him called up.

"Q What did you send for him for?

"A I wanted to talk to him about this case, this polygraph test and things like that.

"Q You told him you were going to take it?

"A Yes. I told my attorney and also Garcia told my attorney I agreed to take it before I did.

"Q This was on the 28th when you talked to him?

"A Yes."

\* \* \* \* \* \*

"THE COURT: Mr. Tannahill, Mr. Reed was your attorney prior to the trial of this matter, is that correct?

"A He was my attorney on this matter.

"THE COURT: Prior to the trial?

"A He was my first attorney I ever had when I was picked up.

"THE COURT: You had some conversations with him?

"A Yes."

The defendant's testimony regarding his attorney is fully corroborated by the testimony of attorney McDonald and attorney Reed given at the voluntariness hearing. Mr. McDonald, who served as defendant's counsel during said hearing, stipulated that "(o)ur position throughout this hearing has been that he (defendant) had counsel."

Mr. Reed testified that he first became acquainted with the defendant when defendant, as an operator of a tow truck, towed his car:

"Q When was the next time after that you saw Mr. Tannahill?

"A When he called me up and told me he was in the sheriff's office on this charge.

"Q Did you go see him in the sheriff's office?

"A I did.

"Q Did you make two visits on the 27th and 28th?

"A I believe so. My recollection isn't very great about that but I believe so.

"THE COURT: You testified that Mr. Tannahill called you from the jail to come and see him.

"A Whether he called me personally or had someone call for him, I am not sure. I didn't make any notation at the time and therefore I have to go on my recollection, which is not perfect in the matter.

\* \* \* \* \* \*

"Q Mr. Reed, after those two visits did there come a time when you felt you were no longer connected with the defendant Mr. Tannahill in any way?

"A Yes. After my visits to him, I heard he had confessed to this crime."

On cross examination Reed stated that on each of the occasions he visited defendant

he talked with him for approximately fifteen minutes regarding the criminal charges.

It is clear to us that defendant considered Reed to be his attorney, that he conferred with Reed and received the benefit of his counsel on at least two occasions before he made his confession and that Reed's testimony and actions denote that he was indeed acting as defendant's attorney, the statements in his affidavit to the contrary notwithstanding.

■ The second question raised by defendant concerns who requested the polygraph test. In claiming that we were in error in stating that defendant made the request, defendant apparently forgot the testimony he gave at both his trial and at the hearing on voluntariness. He testified at the trial as follows:

"Q Do you recall Saturday morning, the 29, I believe, of June?

"A I do.

"Q And what do you remember that morning regarding the polygraph test?

"A They come and got me and took me down to the office down there.

"Q Had you requested to take a polygraphic test?

"A I did.

"Q Is that what they came to get you for?

"A Yes."

At the hearing defendant corroborated his earlier testimony:

"Q And you did request a polygraph test?

"A Yes, to Officer Rohr, I did, yes."

It is obvious from the clear-cut nature of defendant's testimony set out above that his contention in this regard has absolutely no merit.

For the foregoing reasons, we reaffirm our decision in State v. Tannahill, 100 Ariz. 59, 411 P.2d 166.

BERNSTEIN, C. J., McFARLAND, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.